JUDGE KOELTL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CHARLES LUPO,

                      Plaintiff,

          -against-

CITY OF NEW YORK, P.O. NEVILLE SALMON, Shield
No. 6147, and P.O. JOHN DOE, Shield No. Unknown,

                      Defendants.
------------------------------------------------------------------X

13 CV 6367

COMPLAINT
(Jury Trial Demanded)

13 Civ.

      Plaintiff Charles Lupo, by his attorney Scott A. Korenbaum, Esq., for his Complaint alleges as follows:

### PRELIMINARY STATEMENT

1.    Plaintiff Charles Lupo brings this action pursuant to 42 U.S.C. § 1983, to redress the deprivation of his federal constitutional rights. On June 20, 2012, at approximately noon, defendants, each members of the Police Department of the City of New York (the "Department"), arrested Mr. Lupo without probable cause to believe he had committed a crime.

2.    Subsequent to his arrest, defendant Salmon subjected Mr. Lupo to a baseless prosecution when he provided false information to the New York County District Attorneys' Office (the "DA's Office"). As a result of defendant Salmon's information, the DA's Office prepared an accusatory instrument giving rise to Mr. Lupo's criminal prosecution. Having obtained a favorable termination of his criminal prosecution, Mr. Lupo also brings suit to redress this aspect of the violation of his federal constitutional rights.

### JURISDICTION AND VENUE

3.    Pursuant to 28 U.S.C. §§ 1331 and 1343, jurisdiction is proper as plaintiff's claims arise under federal law.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper as the acts complained of occurred in the State of New York, County of New York.

## PARTIES

5. Mr. Lupo is a United States citizen. At the times of the incident complained of, he lived in Brooklyn, New York.

6. Defendant Police Officer Neville Salmon, Shield No. 6147, was, at all times relevant herein, a member of the Department. Upon information and belief, at all times relevant herein, he was assigned to the Transit Division, Special Operations.

7. Upon information and belief, defendant Salmon is still a member of the Department. At all times relevant herein, he was acting within the scope of his employment and under color of law.

8. Defendant Police Officer John Doe, Shield No. unknown, was, at all times relevant herein, a member of the Department. Upon information and belief, at all times relevant herein, he was assigned to the Transit Division, Special Operations.

9. Upon information and belief, defendant Doe is still a member of the Department. At all times relevant herein, he was acting within the scope of his employment and under color of law.

10. Defendant City of New York is a municipal corporation organized pursuant to the laws of the State of New York. It has all the powers vested in it by the laws of the State of New York, the City of New York and the Charter of the City of New York. At all times relevant herein, it was the employer of defendants Salmon and Doe.

## ADMINISTRATIVE PREREQUISITES

11. On September 14, 2012, Mr. Lupo filed a timely Notice of Claim with defendant

City in the Office of the City Comptroller, in accordance with the General Municipal Law, concerning his arrest.

12. At least thirty days have elapsed since Mr. Lupo filed his Notice of Claim and adjustment or payment thereof has been neglected or refused. This action is commenced within one year and 90 days from the date of the occurrences alleged therein, as required under Section 50-i of the General Municipal Law.

13. On October 22, 2012, Mr. Lupo filed a timely Notice of Claim with defendant City in the Office of the City Comptroller, in accordance with the General Municipal Law, concerning his criminal prosecution.

14. At least thirty days have elapsed since Mr. Lupo filed this Notice of Claim and adjustment or payment thereof has been neglected or refused. This action was commenced within one year and 90 days from the date of the occurrences alleged therein, as required under Section 50-i of the General Municipal Law.

## FACTS UNDERLYING THE COMPLAINT

15. At approximately noon, on June 20, 2012, Mr. Lupo was in the corridor of the Times Square subway station on his way to a training class for a New York State security license. At that time, he was approached by defendants Salmon and Doe.

16. Once defendants Salmon and Doe neared Mr. Lupo, one of these officers grabbed him from behind. After one of the officers identified himself, they asked him what was in his pocket.

17. Because he had nothing to hide, Mr. Lupo told the defendants that he had his eyeglass case, a green pen and a knife in his pocket. In response, Salmon took Mr. Lupo's knife.

18. Prior to, and as of June 20, 2012, Mr. Lupo possessed this knife in connection

with his employment as a school janitor. As of June 20, 2012, Mr. Lupo had been assigned to PS 173 and MS 216, in Queens.

19. Mr. Lupo's lawfully possessed the knife. It was not a gravity knife, and its blade was significantly less than four inches.

20. Upon seizing Mr. Lupo's knife, defendant Salmon tried to snap open it approximately nine times. Because it was not a gravity knife, Salmon could not open it.

21. As he saw Salmon failing in his efforts to open his knife, Mr. Lupo could only smile. Mr. Lupo specifically told the defendants that it was not a gravity knife, and even told them how they could get the knife to open.

22. Mr. Lupo's good humor disappeared when officer Doe grabbed his arms and handcuffed Mr. Lupo with his arms behind his back. Despite his protestations, Salmon told him that he was under arrest because he possessed a gravity knife.

23. Following his arrest, Mr. Lupo was prosecuted by the DA's Office. In the accusatory instrument he signed, Salmon accused Mr. Lupo of possessing a gravity knife. As mentioned, this was false, and Salmon knew it was false.

24. On September 14, 2012, the criminal proceeding commenced against Mr. Lupo was dismissed by motion of the DA's Office.

25. The prospect of being arrested and prosecuted had immediate economic repercussions for Mr. Lupo. Among other things, Mr. Lupo feared losing his job at the schools. Second, because he owned a bar, Mr. Lupo also feared losing the liquor license for the bar.

26. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff requests a trial by jury.

## FIRST CLAIM FOR RELIEF
(42 U.S.C. § 1983–False Arrest)

27. Plaintiff Charles Lupo repeats and realleges the allegations contained in paragraphs 1 through 26, as if fully set forth herein.

28. On June 20, 2012, defendants Salmon and Doe arrested Mr. Lupo.

29. These defendants did not have probable cause to believe that Mr. Lupo had committed any crime. Put simply, Mr. Lupo did not engage in any conduct that warranted his arrest and detention.

30. As a result of these defendants' conduct, Mr. Lupo was detained, and at all times he knew he was detained. Moreover, Mr. Lupo did not consent to his confinement.

31. Because these defendants did not have probable cause to believe that Mr. Lupo had committed a crime, his arrest was unreasonable within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution.

32. As a result of his arrest, Mr. Lupo has suffered psychological injuries, and economic harm.

## SECOND CLAIM FOR RELIEF
(State Law – False Arrest)

33. Plaintiff Charles Lupo repeats and realleges the allegations contained in paragraphs 1 through 32, as if fully set forth herein.

34. On June 20, 2012, defendants Salmon and Doe arrested Mr. Lupo.

35. These defendants did not have probable cause to believe that Mr. Lupo had committed any crime. Put simply, Mr. Lupo did not engage in any conduct that warranted his arrest and detention.

36. As a result of these defendants' conduct, Mr. Lupo was detained, and at all times

he knew he was detained. Moreover, Mr. Lupo did not consent to his confinement.

37. Because these defendants did not have probable cause to believe that Mr. Lupo had committed a crime, no legal justification existed for his arrest.

38. The individual defendants were agents of defendant City and were at all relevant times acting within the scope of their employment.

39. As a result of his arrest, Mr. Lupo has suffered psychological injuries, and economic harm.

40. As the employer of the individual defendants, defendant City is responsible for Mr. Lupo's injuries under the doctrine of *respondeat superior*.

## THIRD CLAIM FOR RELIEF
(42 U.S.C. § 1983 – Malicious Prosecution)

41. Plaintiff Charles Lupo repeats and realleges the allegations contained in paragraphs 1 through 40, as if fully set forth herein.

42. On June 20, 2012, defendants arrested Mr. Lupo without probable cause.

43. As a result of his arrest, the DA's Office prosecuted Mr. Lupo for the conduct for which he was arrested. In prosecuting Mr. Lupo, the DA's Office relied upon information provided by defendant Salmon.

44. Following the commencement of his criminal prosecution, Mr. Lupo remained detained. He was required to appear in court to answer the baseless charges against him. Moreover, his ability to travel freely outside the State of New York was restricted.

45. Ultimately, the criminal prosecutions commenced against Mr. Lupo terminated in his favor. On September 14, 2012, the DA's Office dismissed the criminal proceedings against Mr. Lupo on its own motion.

46. At all times relevant herein, defendant Salmon acted with malice. He knew, or should have known, that Mr. Lupo was actually innocent of the offense with which he was charged.

47. As such, the conduct of defendant Salmon violated Mr. Lupo's rights protected by the Fourth and/or Fourteenth Amendments to the United States Constitution.

48. As a result of his arrest and subsequent prosecution, Mr. Lupo has suffered psychological and economic harm.

### FOURTH CLAIM FOR RELIEF
(State Law – Malicious Prosecution)

49. Plaintiff Charles Lupo repeats and realleges the allegations contained in paragraphs 1 through 48, as if fully set forth herein.

50. On June 20, 2012, defendants arrested Mr. Lupo without probable cause.

51. As a result of his arrest, the DA's Office prosecuted Mr. Lupo for the conduct for which he was arrested. In prosecuting Mr. Lupo, the DA's Office relied upon information provided by defendant Salmon.

52. Ultimately, the criminal prosecutions commenced against Mr. Lupo terminated in his favor. On September 14, 2012, the DA's Office dismissed the criminal proceedings against Mr. Lupo on its own motion.

53. At all times relevant herein, defendant Salmon acted with malice. He knew, or should have known, that Mr. Lupo was actually innocent of the offense with which he was charged.

54. Defendant Salmon was an agent of defendant City and was at all relevant times acting within the scope of his employment.

55. As the employer of defendant Salmon, defendant City is responsible for Mr. Lupo's injuries under the doctrine of *respondeat superior*.

56. As a result of his prosecution, Mr. Lupo has suffered psychological and economic harm.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Lupo prays for the following relief:

(a) compensatory damages in an amount to be determined at trial;

(b) punitive damages in an amount to be determined at trial;

(c) reasonable attorneys' fees;

(d) costs and expenses; and

(e) such other and further relief as is just and proper.

Dated: New York, New York
September 10, 2012

SCOTT A. KORENBAUM, ESQ.
Attorney for Plaintiff
11 Park Place, Ste. 914
New York, New York 10007
(212) 587-0018

By: _____
Scott A. Korenbaum